now. Estate of Grubbs v. Hernandez. That's number 18-1358. Thank you, Your Honors. May it please the court. My name is Todd Bovo. I represent the estate of Barton Grubbs. Barton Grubbs was taken into custody as a He swallowed approximately 140 pills of Valium and Percocet under video surveillance in the presence of Trooper Tyndale. He then confessed his attempt to commit suicide to nurse Christian Hernandez, who was employed by CCS Care Solutions as a LPN. Only one and one-half pill remained. Nurse Hernandez did not render any care. She did not call for an ambulance. She did not check on him. She sent him to a cell where he died alone. Ironically, Barton Grubbs was a stonemason and he built the jail. He died 30 hours later of an overdose. This case comes down to two issues. One, the erroneous borrowing of evidence regarding the elements for the claim of deliberate indifference. And number two, a misleading jury instruction which included the definition of negligence, even though only one claim remained, deliberate indifference. In this case, plaintiffs endorsed the preeminent forensic psychiatrist in the country, Dr. Jeffrey Metzner. He has over 40 years of correctional care experience in 153 cases and he's never been unqualified. The order prior to the trial expressed an opinion that Barton Grubbs did not stated that Dr. Metzner was able to express an opinion as to whether an individual trained in conducting a suicide assessment should have believed Mr. Grubbs when he said he had ingested the pills. Kristen Hernandez didn't believe him. Although there was video evidence and surveillance of it, she said she had nothing to go on. Dr. Metzner was prepared to testify in his disclosures that because of the staffing matrix that CCS had, Kristen Hernandez had over 800 patients. She wasn't qualified. She shouldn't have been in that seat in the first place. Kristen Hernandez was right, filling in the information in the form that Dr. Metzner had created. She didn't understand the information and the implications of what that information meant when Mr. Grubbs was having a crisis. Mr. Grubbs was sad because his son had died and he had just gotten arrested after he ingested the pills. He didn't want to die and he told them that. Kristen Hernandez didn't do a full set of vitals. She didn't call the doctor and the court in this case refused to let Dr. Metzner even mention Kristen Hernandez's name. He said, you cannot, you cannot, I'm sorry, in doing so he cannot refer to Nurse Hernandez at all. There can be some indirect reference, but the reason I'm going to preclude him from actually using her name is because I don't want the jury to confuse testimony about Weld County with any implied testimony that Nurse Hernandez was negligent or deliberately indifferent. Basically, the judge moments before Dr. Metzner took the stand completely gutted his testimony and that was consistent with the testimony of the other witnesses, Jacqueline Moore, Dr. Campbell, Dr. Kinnearum, CCS's own Dr. Geppert, and the nurse, Deborah Weatherwax, and Kristen Hernandez. I think the Tenth Circuit is split in whether Kingsley, the Kingsley v. Hendrickson, alters the standard for conditions of confinement and inadequate medical claims brought by pretrial detainees. The Second, Seventh, and Seventh have interpreted Kingsley as displacing prior subjective requirements, and I would encourage this court to do the same. The Eighth and Eleven held Kingsley applies only to excessive force cases and not to inadequate medical care. I think doing away with the subjective element is better for the country, it's better for Mr. Grubbs, because in this context the nurse would have seen two empty pill bottles, a video, and what you do is you send them to the hospital. That's what I did when I was a paramedic and sometimes you got fooled and sometimes you didn't, but in any case you saved somebody's life and that objective component should be endorsed. If there's a reasonable belief that he ingested the pills, what's the harm in taking him to the hospital? That you got duped? Okay, maybe, and it may be an additional expense. However, if you send him to his cell, undeniably he dies. Well, counsel, can I just stop you here? So what is the issue though on appeal? Isn't it the exclusion of the expert testimony? Exactly. Okay, so tell me, maybe you can focus in on that, tell me how that exclusion was erroneous in your view. Well, the court did not allow any of the witnesses on either side to set the parameters, set the standard for what deliberate indifference is, which also led to an erroneous jury instruction, which included the word negligence in the deliberate indifference jury instruction. And we'll definitely talk about the jury instruction here in a second, but can you help me understand what the expert would have testified to that was, in your view, erroneously excluded? Yes. First of all, in the correctional care setting, he defined the standard of care. What an LPN can do, what an RN should be doing, what a doctor does, and he was going to talk about all of that and how this didn't work in this situation. You had an LPN that shouldn't have been doing this in the first place. And when the judge says you can't even mention her name, how is he supposed to describe and opine on the standard of care regarding negligence and deliberate indifference if he can't even talk about the person who is making the call at that time? He said when Kristen Hernandez was told certain facts by Barton Grubbs that he was having a crisis, that he didn't want to die, that he had ingested these pills, she should have known right there that it was time to send him at least to call the doctor and at least to call an ambulance if the doctor wasn't available. And he wasn't allowed to testify to any of that. To that specific... Okay, so that's what you're disputing. Was there a proffer of that testimony by him? Oh, yes. And we properly disclosed him in his 26, in our expert... For that trial, you said if you hadn't sustained the objection, we would put on this testimony by the doctor, by the expert? Oh, yes. Okay. Yes. Okay. Thank you. Sorry to interrupt. I just wanted to check that. Go ahead. In fact, our reply brief states just that. It shows the difference from what the court originally ruled in the limitation of the 702 expert disclosures and then how it completely changed moments before he took the stand. Okay. And so I appreciate you zeroing in on the testimony then. So on what ground are you arguing that it was erroneously excluded? He's the foremost expert in the sequencing of this type of care. And when presented with this kind of information, it's so clear. It should have been so clear to Nurse Hernandez to just send him to the hospital that she departed from that and didn't do that. And there was a claim for negligence against the company and wrongful death and against her. Okay. So, but doesn't the judge say, well, if it's so clear, why do you need expert testimony? Is that what the judge says at that point? Definitely. And there's case law that supports that. But I think when you have the claims of negligence and deliberate indifference, you have to define what is substantially departing. If somebody has a gunshot wound, you clearly send them. If somebody's bleeding out of their eyeballs, then you clearly send them. If you don't believe them that they took the pill, is that substantially departing? And that's what he would have talked about. When did you take the pills? Is it five pills? Is it, you know, 10? This was 140 pills. There was a video of it right there with the trooper. So there's so many things that Kristen Hernandez could have done to save this man's life that she didn't do. And that's what Jeffrey, Dr. Metzner was going to talk about. And the first step in a suicide situation is whether or not, is suicide risk. And that's just whether or not somebody, if somebody doesn't tell you that they're going to, if somebody asks, will you tell me if you're going to commit suicide? And that person says, no, red flag. If that person says, yes, I would tell you, then you don't necessarily need to do a suicide assessment and go to the next step, which is a further evaluation to make sure this guy is safe in jail. And going to that next step, the risk assessment, Kristen Hernandez, her collection of that data was all over the place. She added up the numbers wrong. She miscategorized important details that clearly show she didn't know what she was doing. And that's, and that's why she shouldn't have been in that position in the first place. It should have been an RN or above. And Dr. Metzner was going to talk about that and wasn't able to. Thank you. Well, there was also a jury instruction issue that goes into the same, the same point that was so misleading to the jury that they submitted a note because the language, what happened the eve before closing arguments is all claims, the negligence claims were dropped. And the only claim that remained was deliberate indifference. However, the judge included the definition of negligence in the deliberate indifference instruction. The jury came back and said, we would like you to provide clarity on the difference between deliberate indifference and negligence with regards to failure to act. Basically why the way this jury instruction was worded, if they found, if they found, if she failed to act, then it meant negligence and nothing more. There was no other place for the jury to, to really decide other than negligence. And that's exactly what happened. As soon as the court did not answer this question, they returned a verdict of, in favor of the defendant moments. Counsel, could I get you to address the issue of invited error that you actually invited this and by approving the instruction. And then when the question comes out by approving it again. Yeah, that that's, that's the echo case that Pele cites. And that's, that's completely different in that case. The judge at the first conference, he had made some objections about that jury instruction at the final conference, he had made additional proposals to that jury instruction and the court accepted both of them. And then he appealed based on not getting the language in the first, in the first jury instruction conference. This is completely different. Once we, once we objected and said, we, we, we opposed this, the judge had ruled and there was no rehearing of that. So he didn't revisit that. But, and, and according to the Green v. Redding case, counsel must make points, his points clearly so that the trial judge may see what they are. And if he believes they are right, follow them. But he is not required to indulge in, in, in insistence in order to preserve his client's rights. So we don't, you know, we don't need to object and object and object. Once, once we object and make that clear on the record, pursuant to rule 51, the record is preserved. And, and it's my interpretation of the case law and the rule that we're no longer required to continue that objection once the court has ruled. If I may. Yeah. Keep 40 seconds. Good morning, your honors. May it please the court. Jake Goldstein on behalf of Nurse Hernandez. I'd like to begin where we left off with the jury instruction issue and specifically plaintiff's preservation of that issue for this appeal and your review of that issue. Because I think it can be quickly and easily decided on that ground alone. The record demonstrates that the court actually held five separate jury instruction conferences. The parties initially jointly submitted their instructions to the, to the court before trial. Those instructions included a negligence instruction and the standard deliberate indifference instruction containing the language that mere negligence does not constitute deliberate indifference. Over the course of trial, the court held a couple other conferences where the, where the court discussed the pending preparation of the final instructions. At the third instruction conference, which was at the close of evidence for that day, the day before the parties were going to go into closing arguments, the court raised the issue that the first order of business on the next court day was going to be the preparation of the final jury instructions. At that time, plaintiff's counsel raised their intention of potentially dismissing the negligence counts. The court then told plaintiff's counsel that if you do intend to do that, you need to do that as soon as possible by that evening because it will, quote, trigger a wholesale revision of the instructions. Later that evening, plaintiff indeed did dismiss those counts via email to the court and the parties. The following court day, the court provided the parties with their draft, with its draft jury instructions. Those instructions no longer included the definition of negligence, but it still included the deliberate indifference instruction that had that language in it that mere negligence does not constitute deliberate indifference. At that point, there was a colloquy with counsel where defense counsel raised a comment that it might be useful if the court incorporates the prior negligence instruction into the negligence. And the court, the jury had been listening to evidence of negligence for the past week of the trial. The court then turned to plaintiff's counsel and said, what are your thoughts on this? The plaintiff's counsel then objected and objected on the grounds that adding that instruction would be confusing. That they clearly dropped those claims, that negligence was clearly no longer a part of the case anymore, and that the mere negligence language that was already in the deliberate indifference instruction was sufficient to guide the jury in their deliberations. The court then thereafter overrules plaintiff's objection, because it stated that it was essentially concerned with the risk that the jury, after that week-long trial of hearing evidence of negligence alongside evidence of deliberate indifference, that the jury may potentially, without that instruction, that additional negligence instruction, return a verdict based on evidence of negligence rather than the heightened level of evidence required for deliberate indifference. Thereafter, the court held a recess and revised the instructions to include the old negligence instruction incorporated into the deliberate indifference instruction, and reconvened and a copy of that newly revised and drafted instruction containing the negligence instruction and the statement about negligence of an LPN. The court asked both parties at that time if they've had an opportunity to review that new instruction and if they have, quote, any problems with it. Both parties confirmed that they had reviewed it and that they had no problems with that new instruction. We would submit that in order to have preserved any claim of error with respect to that instruction, plaintiff had to object at that time to that new instruction. Well, counsel, let me... Sure. Can I just get you to respond to the argument that they lost that objection, so they weren't going to do it again? Well, I think we have a new instruction now, and we have a new instruction that they were required to restate their objection for the record to the judge, that judge, for the record, we still stand on our prior objection in order to do that. But judge, let me fast forward a little bit, and this will probably answer your question. Because what actually ended up happening later shows that there was a complete abandonment of that prior objection. And what I mean by that is, as counsel referenced, the jury did send out a note during their deliberations. And the note essentially asked the court to define failure in terms of negligence and failure in terms of deliberate indifference. And to use, the court then turns to the parties and says, what do you think about the jury's question? How should we respond to it? What should we say? And plaintiff's counsel said, I think the definition of deliberate and the definition of negligence are both contained within the instructions. Quote, I think they are adequate. And I think that this was covered thoroughly in the instruction conference on multiple occasions. And so I would say that these are the instructions that you are to rely upon. Defense counsel agreed. And the court thereafter advised the jury to rely on the instructions that were given and no further instructions were provided. Plaintiff, at that time, explained to the court that he didn't believe that the jury was confused. Instead, he believed that the jury was struggling with the, quote, tough question of whether the nurse Hernandez's failure to send Mr. Grubbs to the hospital was merely negligent or did it rise to the level of deliberate indifference. That's at appellate appendix 1693. The only objection that was ever offered at trial was that initial objection two jury instruction conferences prior at the penultimate instructions conference and was never renewed either following the recess when the instruction was given. It wasn't renewed at the time the jury sent out this instruction or question. In fact, again, instead of renewing that objection and pointing out that this is what I was worried about when I made my initial objection, plaintiff stated that he believed the instruction was adequate. Let me back up. Did you have a question? So the first time the defendant objected, the plaintiff objected, excuse me, the plaintiff objected to what aspect of giving the negligence instruction? As I understand it, and the record seems to reveal that it was that the addition of the negligence instruction would make it confusing. That's what plaintiff's counsel initial objection was. And the judge responded that he thought it would actually clarify matters because there'd been a lot of testimony about negligence and the jury needed to hear what negligence was so they'd know how to distinguish it from deliberate indifference. Is that right? The way the judge's apparent reasoning, as best as I can tell, was that he believed that if the jury wasn't told the definition of negligence and they were left with that one instruction on how to differentiate between the two standards. Did plaintiff's counsel respond to that comment by the judge? I don't believe he did. Did he have an opportunity to respond? He had multiple opportunities to respond, not only at the time that the judge made the decision to overrule his objection and add it, but also at the next, after the recess when the instruction was provided to the parties for review. Okay. So based on this procedural backdrop that we have with the preparation and tendering of the instruction, it is our position as judge I'd raised with counsel that this is an invited error waiver. That plaintiff ultimately adopted and endorsed the instruction that was given and because of that, their prior objection was waived under any standard of review, plain or otherwise. Now, even if we set aside the waiver issue, there still was no error in the instruction itself. The, there doesn't seem to be any dispute that the negligence language that was added was a correct statement of law. In fact, again, this was the same instruction that was tendered to the court by both parties at the beginning of trial. There was no material change to that instruction that was ultimately added to the deliberate indifference instruction. But you do see how it could be read by the jury to mean if you simply did nothing, that was negligence, and then look at the deliberate indifference instruction and say, well, it's got to be more than mere negligence to constitute deliberate indifference. You can see the possibility, even likelihood of confusion from that. Well, Judge, I don't. I respectfully disagree because what we have here is that we do have, we did have a case that was going on for a week that was, the jury was presented with two claims. And so at the end of the trial, it was, it was, I believe, vital for the judge to advise the jury even more than in a standard deliberate indifference case, what the difference would be between the negligence standard and a deliberate indifference standard. There was, but the way negligence is stated, it seems to encompass anything that would include deliberate indifference, which makes it hard then to see what's left for deliberate indifference. Well, what's left for deliberate indifference is a much higher level of egregious conduct. And that certainly anything in deliberate indifference, it encompasses negligence. But in order to get to that higher level of deliberate indifference, there has to be this higher degree of conduct, this conscious disregard, you know, for that person's safety in this, to deny them that metal kick error, which it was important in the context of this case for the judge to do that. And that brings me to my next point, which is, you know, this, this ultimately in the context of where the instruction was revised and why it was revised, it was a proper exercise of the court's discretion to do that. Given the week-long trial of these multiple claims, the dismissal of the negligence claim at the 11th hour, and that, you know, the plaintiff makes this point in his brief that, that the instruction now precluded the jury from finding deliberate indifference. But that's not at all what the instruction says. The instruction doesn't say that at all. It just defines what negligence is and what negligence by an LPN would be. And so the jury is then advised of what is the definition of deliberate indifference, what's required to find deliberate indifference, and what the definition of negligence is, and how negligence is not enough to meet that standard. You need to address the exclusion of evidence. Yes, I do see my time is quickly evaporating. So likewise, I, we do not believe there was any error in the court's decisions to exclude Dr. Metzner's opinions or any of the other witnesses' opinions either. Now, the, Dr. Metzner's opinions were excluded, or two sets of opinions were excluded. The, Dr. Metzner's attempts to offer opinions concerning the nursing standard of care. The reason why the court barred those opinions is because by Dr. Metzner's own test, deposition testimony, he was, he has never supervised licensed nurses. He has never received any formal training in licensing, in nursing standards of care. He, and has also never worked in such close proximity with nurses to have become familiar with the applicable standards of care for nurses in that setting. And so given these admissions, and given the court's wide latitude under 702 to exclude unqualified opinions like these, it certainly was not an abusive discretion for the judge to leave those out. And I do want to address one thing that plaintiff did bring up, and the court asked about it on offer of proof. You know, there was no offer of proof of what the actual testimony would have been from Dr. Metzner on either the standard of care issue or on the next issue, his opinions concerning causation. So we respectfully ask Plaintiff's counsel to point to where in the record that takes place. But moving to the causation point, you know, there, the reason why the court barred Dr. Metzner's causation opinions was also because by his own deposition testimony, it established that he could not remember the last time he had ever prescribed Valium or Oxycodone, the two drugs that were the two prescription medications that Mr. Grubbs had ingested. His estimates for peak absorption time for Valium were not supported by even the look at other sources in order to determine that, and he hadn't extensively researched the issue. He also testified that he could not identify peak absorption time for Oxycodone and would have to look that up. And he was also not familiar with current methods for delaying absorption of these drugs and pumping of the stomach of an overdose patient. And so ultimately, he testified that he could not, he did not consider himself an expert in resuscitative measures for overdose situations. So given this, these admissions in deposition, it was well within the court's wide discretion to find that Dr. Metzner was not qualified to offer a causation opinion. Your time's expired. The time's running up once the red light comes on. I apologize. Thank you, counsel. Thank you, Your Honor. If I could just get a few things in really quickly. The language that was inserted is, deliberate indifferent jury instruction instructs the jury that if Nurse Hernandez fails to do an act that reasonably careful licensed practical nurse would do, then that was negligence and not deliberate indifference. This instruction erroneously compels a jury to conclude any medical malpractice precludes the finding of deliberate indifference. Did you point that out to the district judge? Yeah, exactly. This is what was said right after. Deliberate indifference doesn't take into account, first it was... When you say what was said right after, were you just quoting what you had said and objecting to the instruction? Yes. As soon as that language was submitted, this is what was said immediately to the court. My wife objected to adding the additional negligence language to the deliberate indifference jury instruction. She stated, it could pose to be very confusing to the jury. And then stated, deliberate indifference doesn't take into account a licensed professional nurse and instruction number 13 as it stands, seems to be very specific towards an LPN and the standards. And that would seem to be pretty confusing, especially since there are no affirmative or comparative negligence in deliberate indifference. When you first walked up to the mic just now, you made a statement. Were you quoting? Yes. Quoting from what? That is appellate APLT app at 1639. That was the dialogue right when the court changed the language and included negligence and deliberate. That was the dialogue that happened at APLT app 1639. And if I can finish that point. Very quickly. That language never changed. So when plaintiffs made that objection, contrary to the echo case, where the judge echo acceptance court, where the judge allowed new submissions, would he accept it? You've already made that distinction. Yes. Thank you. It didn't change. Thank you, Your Honor. Case is admitted. Counselor excused. We're going to take a brief recess.